## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SHAWN A. LOCKETT, SR.,                       :
                                             :
                 Petitioner                  :      CIVIL ACTION NO. 3:12-CV-02264
                                             :
           vs.                               :      (Petition Filed 11/13/2012)
                                             :
BRIAN V. COLEMAN, ET AL.,                    :      (Judge Caputo)
                                             :
                 Respondents                 :

### MEMORANDUM

Petitioner, Shawn A. Lockett, Sr., on November 13, 2012, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Lockett attacks the judgment of conviction and sentence imposed by the Court of Common Pleas of Dauphin County, Pennsylvania, after a jury returned guilty verdicts.   Lockett was convicted of several offenses, including Third Degree Murder, and received an aggregate sentence of 7 to 14 years of imprisonment. Lockett alleges that there was a plea bargain offered to him which would have resulted in a sentence of 3 to 6 years in prison which he accepted prior to the jury returning a guilty verdict on the charge of Third Degree Murder.  He argues that the prosecutor engaged in misconduct when he failed to follow through with the plea agreement and that his counsel was ineffective for failing to bring the plea agreement to the attention of the trial court.

In accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999) and Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), the Court issued formal notice to Lockett that he could either have the petition ruled on as filed, that is, as a § 2254 petition for writ of habeas corpus and heard as such, but lose his ability to file a second or successive petition,

absent certification by the court of appeal, or withdraw his petition and file one all-inclusive § 2254 petition within the one-year statutory period prescribed by the Antiterrorism Effective Death Penalty Act. Doc. 3. On December 13, 2012, in response to the Notice, Lockett elected to have the court rule on his petition as filed. Doc. 4. By Order dated December 18, 2012, the Court directed respondents to file an answer to Lockett's petition and a brief in support of their answer. Doc. 5. An answer, brief and appendix of exhibits was filed by the Dauphin County District Attorney on January 4, 2013. Doc. 6. The matter became ripe for disposition on January 21, 2013, when Lockett elected not to file a reply brief.

For the reasons that follow, the Court will deny Lockett's petition.

## Background

The factual background of this case is succinctly set forth in a petition for allowance of appeal filed by Lockett on January 13, 2012, with the Pennsylvania Supreme Court as follows:

> On April 30, 2007, [Lockett] was arrested and charged with the crimes of Criminal Homicide, Endangering the Welfare of Children, Criminal Conspiracy (2 counts), and Possession of a Small Amount of Marijuana. These charges stem[med] from the death of [Lockett's] daughter, Quiniece Lockett, who was severely disabled and was not able to care for herself.
>
> On April 21, 2007, Quiniece was scalded in her bathtub at home and suffered third-degree burns. LaShawn Brown, a family friend, was the primary caretaker of the children residing in the home, while [Lockett] worked two jobs. [Lockett] was not home at the time of the scalding, but came home after he learned of it from LaShawn Brown. Once there, he observed Quiniece's back, and he then went to the store to purchase some ointment for the burns. [Lockett] indicated that he thought of taking his daughter to the hospital, but was afraid they wouldn't believe it to be an accident.
>
> On April 29, 2007, [Lockett] called 911 and informed the operator that Quiniece was not breathing. An autopsy performed on Quiniece revealed the cause of her death to be complications from thermal burns and the

2

> manner of death to be homicide. It was determined that Quiniece would have
> likely survived her injuries had she received medical attention.

Doc. 6-6, Lockett's Appendix of Exhibits, Exhibit J at 44-45. On June 26, 2008, a jury sitting

in the Dauphin County Court of Common Pleas found Lockett guilty of Third Degree Murder,

Endangering the Welfare of a Child, and two counts of Criminal Conspiracy. Doc. 6-4,

Lockett's Appendix of Exhibits, Exhibit A at 6 & Exhibit C at 49. On July 24, 2008, the trial

court imposed a sentence of 7 to 14 years' imprisonment plus fines and costs. Id.

On direct appeal to the Superior Court of Pennsylvania, Lockett only

challenged the weight of the evidence supporting the conviction of Third Degree Murder. Id.,

Exhibit B at 25. On October 16, 2009, the Superior Court affirmed Lockett's judgment of

conviction and sentence. Id., Exhibit C at 49-54 (Commonwealth v. Lockett, No. 2227 MDA

2008 (Pa. Super. October 16, 2009)(unpublished memorandum)). Lockett did not file a

petition for allowance of appeal with the Supreme Court of Pennsylvania.

On December 31, 2009, Lockett filed a pro se petition under Pennsylvania's

Post Conviction Relief Act (PCRA). Doc. 6-5, Lockett's Appendix of Exhibits, Exhibit D. On

April 28, 2010, Lockett's appointed counsel filed a supplemental PCRA petition. Id., Exhibit

E. In that supplemental petition, Lockett raised several claims including that his trial counsel

was guilty of ineffective assistance of counsel for failing to bring to the attention of the trial

court the plea bargain mentioned above and that the prosecutor engaged in misconduct for

reneging on the agreement. Id.

On November 20, 2010, the trial court conducted an evidentiary hearing on

Lockett's PCRA claims. Id., Exhibit F. On April 27, 2011, the trial court dismissed the

petition. Doc. 6-6, Lockett's Appendix of Exhibits, Exhibit G. In dismissing Lockett's petition,

3

the trial court stated in relevant part as follows:

> Defendant's ineffective assistance of counsel claim asserts that
> [defense counsel] was ineffective for failing to present the trial
> Judge . . . with a plea agreement for three to six years of incarceration,
> which Defendant claims was offered by [the deputy district attorney]
> prior to the Jury reaching a verdict.  Defendant also claims that his
> appellate counsel . . . [relating to the direct appeal] was ineffective for
> for failing to raise the plea agreement issue on appeal.  At the November
> 30, 2010, hearing, both [the prosecutor and defense attorney] testified
> that no formal agreement had been offered, let alone agreed upon.
>
> Apparently, while the Jury was deliberating, both attorneys had at
> one point been discussing whether or not [the deputy district attorney's]
> superior (District Attorney Ed Marsico), who was required to approve all
> plea deals for the Commonwealth in murder cases, might consider a
> number of other options including three to six years instead of eight
> to sixteen years which the Commonwealth had previously offered
> (which Defendant turned down).  Before [the deputy district attorney]
> could approach his superior to inquire as to plea options, tip staff
> announced a question from the jury regarding third degree murder.
> At that point [the deputy district attorney], believing that deliberations
> had turned decidedly in favor of the prosecution, broke off negotiations.
> Defendant himself admitted that he was not a witness to any proposal or
> negotiation, but rather heard at some later date that such a plea agreement
> had been discussed.  <u>This court is convinced by the testimony of [the
> deputy district attorney] and [defense counsel] that a three to six year
> plea agreement had not been offered by the Commonwealth and had
> not been accepted by Defendant</u>.  As a result, we find that Defendant's
> final ineffectiveness claim is without merit and therefore deny the portion
> of Defendant's Motion which pertains to the matter.

<u>Id.</u> at 7-8 (emphasis added).   Lockett than filed an appeal with Superior Court but did not

raise an ineffective assistance of counsel claim with respect to the alleged plea agreement.

Instead, Lockett merely argued that the prosecutor engaged in misconduct by failing to

honor the plea agreement and that trial counsel was ineffective for failing to call LaShawn

Brown as a witness during the trial. Doc. 6-6, Lockett's Appendix of Exhibits,  Exhibit H.

On December 19, 2011, the Superior Court affirmed the denial of Lockett's

4

PCRA petition. Id., Exhibit I (Commonwealth v. Lockett, No. 837 MDA 2011 (Pa. Super. December 19, 2011)(unpublished memorandum)).  The Superior Court held that Lockett's claim that the prosecutor engaged in misconduct when he reneged on the plea agreement was waived because Lockett did not raise it on direct appeal. Id. at 34.  With respect to Lockett's second argument, the Superior Court held that his trial counsel "articulated a reasonable basis for not  calling Ms. Brown" and, consequently, trial counsel was not guilty of ineffective assistance. Id. at 37-38.

On January 13, 2012, Lockett filed a petition for allowance of appeal with the Pennsylvania Supreme Court. Id., Exhibit J.  In addition to the claim that the prosecutor engaged in misconduct for reneging on a plea agreement and ineffective assistance of trial counsel for failing to call Ms. Brown as a witness, Lockett claimed that the issue of prosecutorial misconduct was not waived because that issue was raised in the context of defense counsel's ineffective assistance. Id. at 47.   Lockett in his petition for allowance of appeal limited the ineffective assistance claim to appellate counsel who failed to raise the issue of prosecutorial misconduct on direct appeal.  Id. at 44.  On September 17, 2012, without elaboration the petition for allowance of appeal was denied by the Supreme Court in a per curiam order. Id. at 55.

## Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."

Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-8 (1991); see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson vs. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

## A. **Exhaustion**

Habeas corpus relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant. See 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000).

A state prisoner exhausts state remedies by giving the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999). "All claims that a petitioner in state custody attempts to present to a federal court must have been presented to each level of the state courts." Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), cert. denied, 531 U.S. 1082 (2001). Respect for the state court system requires that the petitioner demonstrate that the claims in question have been "fairly presented to the state courts." Castille v. Peoples, 489 U.S. 346, 351 (1989). Fair presentation requires the petitioner to raise the claim in a procedural context in which the

state courts can consider it on the merits. Id.

## B. **Procedural Default**

If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); see Teague v. Lane, 489 U.S. 288, 297-98 (1989).  Although deemed exhausted, such claims are considered procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 749 (1991); Lines, 208 F.3d at 160.

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750-51; Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992).  To demonstrate cause for a procedural default, the petitioner must show that some objective external factor impeded petitioner's efforts to comply with the state's procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986).  To demonstrate actual prejudice, the petitioner must show "not merely that the errors created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire proceeding with error of constitutional dimensions." See United States v. Frady, 456 U.S. 152, 170 (1982).

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger, 266 at 224.  The

7

miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496.

## C. **Merits**

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Matteo v. Superintendent, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." Id.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. Miller-El v. Cockrell, 537 U.S.

8

322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions) Matteo, 171 F.3d at 888; Thomas v. Varner, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. Campbell v. Vaughn, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); Porter v. Horn, 276 F. Supp 2d 278, 296 (E.D. Pa. 2003); see also Torres v. Prunty, 223 F.3d 1103, 1107-08 (9th Cir. 2000); cf. Jackson v. Virginia, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." Breighner v. Chesney, 301 F. Supp 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[1]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. Porter, 276 F. Supp 2d at 296; see also Williams v. Taylor, 529 U.S. 362, 408-09 (2000); Hurtado v. Tucker, 245 F.3d 7, 16 (1st Cir. 2001). Only when the

---

[1]"If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. <u>Porter</u>, 276 F. Supp 2d at 296; <u>see also</u> <u>Williams</u>, 529 U.S. at 408-09.

## Discussion

Lockett as stated above raises essentially one issue in his present federal habeas petition. He claims that his counsel was ineffective for failing to pursue the claim that the deputy district attorney failed to honor a plea agreement which Lockett had accepted prior to the jury returning a verdict. The Dauphin County District Attorney argues that Lockett failed to exhaust his remedies with respect to this issue and that it is procedurally defaulted. The District Attorney also argues that even if the claim was not procedurally defaulted, the decision of the state post-conviction trial court that there was no such plea agreement and that counsel was not ineffective was neither an unreasonable application of the facts in light of the evidence presented at the post-conviction hearing nor contrary to clearly established federal law.

It is clear based on this courts review of the state court record that Lockett failed to raise on direct appeal a claim of prosecutorial misconduct relating to the alleged plea agreement. Consequently, the only means of reasserting the argument was in the context of an ineffective assistance of counsel claim. Counsel for Lockett did assert such a claim in the PCRA petition and during the evidentiary hearing at the trial court level. The trial court found that the claim was without merit. In so doing the trial court heard testimony from Lockett, the deputy district attorney

and defense counsel but primarily relied on testimony from the deputy district attorney in finding that there was never a binding plea agreement. The deputy district attorney testified in pertinent part as follows:

> Q. Do you recall the circumstances that were discussed here earlier about a possible plea bargain of a three-to-six year range sentence?
>
> A. I have a recollection of discussing two plea bargains in the case, one prior to trial and one during the jury deliberations.
>
> Q. Let's start with the one prior to trial. Could you relate to this Honorable Court what your understanding of the negotiations were prior to trial?
>
> A. Well, I had discussions with Mr. Welch and I also had discussions with Mr. Winnick who was representing the codefendant, Miss Brown. During the course of those discussions, I know at one point in time I believe we made an offer of 8-to-16 years for third degree murder. I felt very strongly that this was a case of third degree murder.
>
> Through the course of the negotiations with Mr. Winnick, that changed to 7-to-14 years. I was able to get that approved by the District Attorney and the victim's - the victim's mother, and also the police.
>
> \*    \*    \*    \*    \*    \*    \*
>
> So when we went to trial, prior to trial, when we were discussing it with Mr. Welch, Mr. Welch indicated that his client would not take the plea agreement, that his client was very –
> felt very strongly that it was not a third degree murder case,

11

that it was at most an involuntary manslaughter, and that's –
actually, we went to trial and we did discuss that with Judge
Kleinfelter at the beginning of the trial.

\*       \*       \*       \*       \*       \*       \*

Q. Now, during the trial, or I guess I should say as the jury was
deliberating, were there other discussions about a possible
negotiation?

A. Well, during the jury deliberations, the jury was taking a very
long time to deliberate. I knew it would be a difficult deliberation,
given the tug between involuntary manslaughter and third degree
murder.

This was not your average third degree murder case . . .
So I knew it would be a difficult case. But as the jury was deliberating,
the questions that the jury . . . were asking were dealing with the
lesser charges . . .

And I mean, frankly, I got a little nervous about that. So we did
begin some discussions about a possible plea. I was insistent with
Mr. Welch that if there was to be a plea it was going to be to third
degree murder. But I needed to go through an approval process that our
office has. I needed to discuss it with the District Attorney. I needed
to discuss it with the mother of the child, Crystal Lockett. And I needed
police approval first.

And I was going through those steps. And I remember sitting
in the courtroom, speaking with Crystal Lockett about the possibility of
offering a plea. I remember discussing it with the police, and I remember
having some preliminary discussions with Mr. Welch; however, we did
not make a formal offer of any plea. What occurred was – and I
remember clearly Mr. Welch was at one point, I believe, sitting in
the witness chair as we were waiting for the jury to come back.

12

>        And I was getting ready to approach him to make a formal
>        offer, and that point in time one of the tipstaff came out of the side
>        door with another question from the jury.  And I wanted to hear what
>        that question was prior to making an offer.
>
>        The question was for the first time asking about malice and
>        third degree murder.  And at that point in time I decided that it looked
>        like third degree murder was still on the table in the minds of the jury
>        and that I did not want to offer that  - that offer.
>
>        That's what I recall about our discussions.  So there was no plea
>        offer ever formally tendered by the Commonwealth to the defense.

Doc. 6-5, Lockett's Appendix of Exhibits, Exhibit F at 62-63.

        On appeal to the Superior Court Lockett when drafting his brief only asserted under the statement of questions involved a claim of prosecutorial misconduct and that counsel was ineffective for failing to call Lashawn Brown as a witness. Doc. 6-6, Lockett's Appendix of Exhibits, Exhibit H at 19.  Lockett did not raise an ineffective assistance of counsel claim relating to the alleged misconduct of the prosecutor. Id.  Under those circumstance the Superior Court determined that the prosecutorial misconduct claim was waived because it should have been raised on direct appeal.  Thus, this claim is unexhausted.  Because procedural rules bar him from pursuing this unexhausted issue in state court, he has procedurally defaulted on this claim.[2]  Lockett has not averred cause for

_____

        [2]The time period for filing a PCRA petition has expired.  See 42 PA. CONS. STAT. § 9545(b)(1) (setting for a one year limitations period).  Lockett raises no argument, and the record suggests no possibility, that his claims fall within an exception to the limitations period for filing a petition under the PCRA.  See 42 PA. CONS. STAT. §9545(b)(1) (permitting petitions to be filed more than one year after judgment if the failure to raise the claim is attributable to government interference, the facts underlying the claim could not have been ascertained previously, or the claim involves rights newly recognized and

or prejudice by the default. He has not demonstrated his actual innocence such that a lack of review by the court would constitute a fundamental miscarriage of justice. <u>See McCandless</u>, 172 F.3d at 260. Consequently, he is precluded from pursuing federal habeas corpus relief with regard to this issue.

Even if this court concluded that Lockett's ineffective assistance of counsel claim was not procedurally defaulted, the court would find that the claim is without merit. In <u>Strickland v. Washington</u>, 466 U.S. 668, 688,(1984), the United States Supreme Court held that to prove a constitutional violation for ineffective assistance of counsel, a habeas petitioner must meet a two-pronged test. The petitioner must show "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." <u>Id.</u> at 687; <u>accord</u> <u>Deputy v. Taylor</u>, 19 F.3d 1485, 1493 (3d Cir.1994).

To demonstrate deficient performance, a petitioner must show that "counsel's performance fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688; <u>accord</u> <u>Jermyn v. Horn</u>, 266 F.3d 257, 282 (3d Cir.2001). A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689; <u>accord</u> <u>Jermyn</u>, 266 F.3d at 282; <u>Berryman v. Morton</u>, 100 F.3d 1089, 1094 (3d Cir.1996). If, under the circumstances, counsel's actions might be considered sound trial strategy, the presumption is not rebutted, <u>Strickland</u>, 466 U.S. at 689, because "substantial deference is to be accorded counsel's tactical decisions." <u>United States</u>

retroactively applied by the Supreme Court).

14

v. Wiener, 127 F.Supp.2d 645, 648 (M.D.Pa.2001). A decision supported by "reasonable professional judgment does not constitute ineffective assistance of counsel. See Burger v. Kemp, 483 U.S. 776, 794, (1987). It follows that counsel cannot be deemed ineffective for pursuing a meritless claim. Hartey v. Vaughn, 186 F.3d 367, 372 (3d Cir.1999).

A petitioner satisfies the second prong and shows prejudice when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; accord Frey v. Fulcomer, 974 F.2d 348, 358 (3d Cir.1992) "Without proof of both deficient performance and prejudice to the defense ... it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand." Bell, 535 U.S. at 695 (internal quotations and citation omitted). In assessing whether the result of the proceeding might have been different, a reviewing court must consider the "totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695; Jermyn, 266 F.3d at 283.  However, "a court can choose to address the prejudice prong before the ineffectiveness prong and reject an ineffectiveness claim solely on the ground that the defendant was not prejudiced." Rolan v. Vaughn, 445 F.3d 671, 678 (3d. Cir. 2006).  "The object of an ineffective assistance claim is not to grade counsel's performance.  If it is easier to dispose of an ineffective

assistance claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id.

At the time the state court reviewed the claims raised by Lockett, Strickland's familiar two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims. Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance of counsel claims, but is, in substance, identical to the Strickland test. See, e.g., Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973, 975-77 (Pa.1987). The Third Circuit Court of Appeals has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to Strickland. Jacobs v. Horn, 395 F.3d 92, 107 n. 9 (3d Cir.2005); Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir.2000). Thus, under § 2254(d)(1), the relevant inquiry in addressing an ineffectiveness claim that has been adjudicated on the merits is whether the Pennsylvania's Supreme Court's decision involved an unreasonable application of Strickland. Jacobs, 395 F.3d at 107 n. 9; Werts, 228 F.3d at 204.

The post-conviction trial court found based on the testimony of the deputy district attorney that there was never a formal offer of a plea agreement or an acceptance of an offer. Consequently, the claim of prosecutorial misconduct for failure to honor a plea agreement was without merit and any claim of ineffectiveness stemming from that claim was also without merit. There was no plea agreement offered and as such, neither trial counsel nor appellate counsel can be found to

ineffective for failing to raise the issue. This determination by the trial court was not an unreasonable determination in light of the testimony or contrary to any clearly established federal law.

An appropriate order will be entered.

A. RICHARD CAPUTO
United States District Judge

Dated: November 14, 2014